**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KWOK SZE,<br>Plaintiff<br>v.<br>JEH JOHNSON, et al.,<br>Defendants. | Civil Action No. 15-0191 (CKK) |

**MEMORANDUM OPINION**
(March 24, 2016)

In an attempt to renounce his United States citizenship pursuant to 8 U.S.C. § 1481(a)(6), Plaintiff, proceeding *pro se*, filed this action under the Administrative Procedures Act, 5 U.S.C. §§ 701-706, and the Mandamus Act, 28 U.S.C. § 1361, also alleging violations of his Fifth Amendment due process rights. Plaintiff names as defendants three federal officials ("collectively, the "DHS Defendants")—Jeh Johnson, Secretary of the Department of Homeland Security ("DHS"), Leon Rodriguez, Director of the United States Citizenship and Immigration Services ("USCIS"), and Felicia Colvin, Field Office Supervisor, USCIS—and one state official—Anthony J. Annucci, Acting Commissioner, New York State Department of Corrections and Community Supervision.

Presently before the Court is DHS Defendants' [15] Motion to Dismiss Plaintiff's Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1), (6), and (7). Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court GRANTS DHS Defendants' [15] Motion to Dismiss.

[1] The Court's consideration has focused on the following documents: DHS Defendants' Motion to Dismiss, ECF No. [15]; Plaintiff's Opp'n to DHS Defendants' Motion to Dismiss, ECF No. [28]; DHS Defendants' Reply, ECF No. [33], Plaintiff's First Motion for Default Judgment as to Defendant Annucci, ECF No. [22], and Plaintiff's Second Motion for Default Judgment as to Defendant Annucci, ECF No. [31].

Additionally, the Court finds that it lacks personal jurisdiction over Defendant Anthony J. Annucci, Acting Commissioner, New York State Department of Corrections and Community Supervision. Accordingly, the Court shall DENY Plaintiff's Motions for Default Judgment against Defendant Anthony J. Annucci. The Court shall dismiss this case in its entirety.

## I. BACKGROUND

For the purposes of the motions before the Court, the Court accepts as true the well-pleaded allegations in Plaintiff's Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). The Court recites the principal facts pertaining to the issues raised in the pending motions, reserving further presentation of the facts for the discussion of the individual issues below.

Plaintiff was born in Hong Kong and became a naturalized U.S. citizen in November 1996. USCIS 2.[2] During the time period relevant to this proceeding, Plaintiff has been, and is currently, incarcerated in a New York state correctional facility. USCIS 3.

On April 11, 2011, Plaintiff sent to the Attorney General a letter, containing his "application to renounce [his] U.S. citizenship" on U.S. soil, on the basis that the United States was in a "state of war," pursuant to 8 U.S.C. § 1481(a)(6). *See* USCIS 26; Compl., Ex. A. Upon receiving Plaintiff's letter, the Department of Justice ("DOJ") forwarded it to Janet Napolitano,

---

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

[2] All references to the Administrative Record in this case are cited as "USCIS ___" which corresponds with the bates-stamped page numbers of the Administrative Record filed with DHS Defendants' Motion to Dismiss. Where Plaintiff's Complaint included as an attachment documents identified in the Administrative Record, a parallel citation to Plaintiff's Complaint is provided.

then-Secretary of Homeland Security, and noted that Plaintiff's request appeared to fall within DHS's jurisdiction. *See* USCIS 25; Compl., Ex. B. USCIS, a component of DHS, responded to Plaintiff's request by letter dated May 20, 2011. *See* USCIS 27-28; Compl., Ex. C. USCIS informed Plaintiff that he "may only renounce U.S. citizenship through procedures established by the U.S. Department of State." USCIS 27; Compl., Ex. C. USCIS cited—apparently in error—8 U.S.C. § 1481(a)(5), which permits a citizen to relinquish U.S. citizenship by "making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state," if certain conditions are met. USCIS 27, Compl., Ex. C.

Plaintiff responded to USCIS by letter dated May 24, 2011 and again by letter dated June 28, 2011. *See* USCIS 29, 41; Compl., Ex. D. Plaintiff re-affirmed that he sought to renounce his citizenship on U.S. soil under Subsection (a)(6), rather than by appearing at a U.S. embassy or consulate in a foreign country pursuant to Subsection (a)(5). USCIS 29, 41; Compl., Ex. D.

It appears that the next communication between Plaintiff and USCIS was by letters dated March 18 and April 10, 2014, when Plaintiff again sought to renounce his citizenship under Subsection (a)(6). *See* USCIS 30-36; Compl., Ex. E, F. In his March 2014 letter, Plaintiff claimed that USCIS' prior response had not addressed the merits of his request under Subsection (a)(6) and that he was "exercis[ing] [his] right" to renounce his citizenship. *See* USCIS 31, 32; Compl., Ex E.

USCIS responded by letter dated April 15, 2014. *See* USCIS 37-38; Compl., Ex. G. In that letter, USCIS indicated that USCIS could not proceed with his request, and that to "renounce U.S. citizenship while present in the United States, a person must appear for an interview in person at a designated USCIS office." USCIS 37; Compl., Ex. G. USCIS also stated that "USCIS will not interview potential renunciants by phone or video link, and will not travel to

prisons or jails to conduct renunciation interviews." USCIS 37; Compl., Ex. G. USCIS advised Plaintiff that upon completion of his term of incarceration, Plaintiff could resubmit his renunciation request and submit evidence to show that he had satisfied the legal requirements of renunciation. USCIS 37; Compl., Ex. G.

Plaintiff sought to administratively appeal USCIS's determination. *See* USCIS 13-24. USCIS returned Plaintiff's notice of appeal, informing Plaintiff that no appeal was available. *See* USCIS 1.

On February 5, 2015, Plaintiff filed this action. Invoking the Mandamus Act and the APA, Plaintiff seeks to "appeal[] the denial of his request to renounce his United States Citizenship because USCIS incorrectly applied the wrong law to Plaintiff's application." Compl. at 2. Plaintiff also alleges "standing under the Fifth Amendment of the United States Constitution because he has been denied procedural due process in not being able to [exercise] his statutorily granted right under 8 U.S.C. 1481(a)(6) to renounce his citizenship." Compl. ¶ 9. Plaintiff also alleges in his Complaint that the New York State Department of Corrections and Community Supervision informed Plaintiff that "it would not transport [Plaintiff] to a USCIS facility for purposes of an interview to renounce his citizenship despite [Plaintiff]'s offer to pay for secure transport." Compl. ¶ 18.

Plaintiff seeks relief in the form of a "declaration that [Plaintiff] has formally, voluntarily, and intentionally renounced his United States citizenship, or in the alternative that USCIS must process [Plaintiff]'s renunciation, and issue the certificate of loss of [nationality]." Compl. at 6 ¶ A. Plaintiff also seeks (1) an order requiring the New York State Department of Corrections and Community Supervision to provide Plaintiff secure transport to a USCIS field office or, in

the alternative, (2) an order requiring USCIS to schedule a jail visit by USCIS officials to conduct a renunciation interview. Compl. at 6 ¶ C.

On May 26, 2015, the DHS Defendants filed a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (6), and (7) for the following reasons: (1) Plaintiff's claims under the Mandamus Act are moot, as USCIS has already afforded Plaintiff all of the relief he is entitled to under the Act; (2) Plaintiff's APA claims challenge agency action permitted by statute and otherwise committed to agency discretion by law; (3) Plaintiff's Due Process claim fails to identify a protected liberty or property interest; and (4) Plaintiff fails to invoke this Court's jurisdiction over Defendant Annucci, a party whom the DHS Defendants deem to be a necessary party in this dispute, and therefore, complete relief cannot be provided.

As discussed below, the Court agrees that Plaintiff's claims under the Mandamus Act are moot and must be dismissed under Rule 12(b)(1), and that Plaintiff's APA and Due Process claims fail to state a claim under Rule 12(b)(6). Accordingly, the Court finds it unnecessary to consider whether to dismiss the case under Rule 12(b)(7) on the basis that Plaintiff failed to join a party under Rule 19. The Court does find, however, that it lacks personal jurisdiction over Defendant Annucci, and that Plaintiff's claims as to Defendant Annucci must be dismissed.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Rule 12(b)(1))

To survive a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA,* 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

*Coal. for Underground Expansion v. Mineta,* 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n,* 429 F.3d 1098, 1106 (D.C. Cir. 2005).

A federal court does not have subject matter jurisdiction over claims that are moot. *Worth v. Jackson*, 451 F.3d 854, 857 (D.C. Cir. 2006) (jurisdiction depends on "the constitutional boundaries . . . of standing, mootness, and ripeness"). Therefore, "a claim that is moot must be dismissed for lack of subject matter jurisdiction." *Amin v. Nyack Sch. of Adult & Distance Educ.*, 710 F. Supp. 2d 80, 82 (D.D.C. 2010).

**B. Motion to Dismiss for Failure to State a Claim (Rule 12(b)(6))**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although *pro se* litigants are generally "held to less stringent standards than formal pleadings drafted by lawyers, they must still provide more than conclusory allegations to survive a motion to dismiss." *Lewis v. Bayh*, 577 F. Supp. 2d 47, 56 (D.D.C.2008) (internal citations omitted).

## III. DISCUSSION

In moving to dismiss, the DHS Defendants argue (1) that the Court does not have subject-matter jurisdiction to entertain Plaintiff's request for mandamus and (2) that Plaintiff does not state a claim under the Administrative Procedure Act or the Due Process Clause. The Court will address each argument in turn, and then will address whether it has personal jurisdiction over the sole state defendant in this matter—Defendant Anthony J. Annucci, Acting Commissioner, New York State Department of Corrections and Community Supervision. The Court will begin, however, with a brief discussion regarding the applicable legal framework.

### A. Legal Framework.

"Congress has broad authority over the conditions and procedures which must be satisfied to expatriate." *Turner v. Beers*, 5 F. Supp. 3d 115, 119 (D.D.C. 2013) (quoting *Koos v. Holm*, 204 F.Supp.2d 1099, 1107 (W.D. Tenn. 2002)). In exercising such authority, Congress has promulgated seven procedures for voluntary expatriation. *See* 8 U.S.C. § 1481(a)(1)-(7). The first five procedures require the person seeking renunciation to be in a foreign country. *See id.* § 1483(a) ("Except as provided in paragraphs (6) and (7) of section 1481(a) . . ., no national of the United States can lose United States nationality under this chapter while within the United States . . . ."). The remaining two procedures, conversely, allow citizens to renounce their citizenship while in the United States. *See id.* § 1481(a)(6)-(7). The first procedure, codified in Subsection (a)(6), permits citizens to give up their citizenship by voluntarily

> making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense.

*Id.* § 1481(a)(6). Although the statute refers to the Attorney General, this authority has since been transferred to the Secretary of Homeland Security. *Turner*, 5 F. Supp. 3d at 119 (citing 6 U.S.C. § 557). The second procedure, codified in Subsection (a)(7), requires "committing any act of treason against, or attempting by force to overthrow, or bearing arms against, the United States." Not surprisingly, Plaintiff attempts to renounce his U.S. citizenship pursuant to Subsection (a)(6), rather than (a)(7).

The Government does not address in its pleadings whether the United States is "in a state of war," which is a prerequisite for Subsection (a)(6) to be operative. *See Kaufman v. Holder,* 686 F. Supp. 2d 40, 43–44 (D.D.C. 2010) (holding that United States was in state of war during 2004 and 2008 for purposes § 1481(a)(6)); *but see Koos v. Holm*, 204 F. Supp. 2d 1099, 1108 (W.D. Tenn. 2002) ("the United States is not in a state of war and § 1481(a)(6) is presently inoperative"). The Court will assume, without deciding, that the country is in a state of war for the purposes of deciding the DHS Defendants' Motion to Dismiss.

**B. <u>Plaintiff has Received all of the Relief to which He is Entitled under the Mandamus Act.</u>**

Plaintiff cites the Mandamus Act, 28 U.S.C. § 1361, as a basis for jurisdiction and relief. Compl. ¶ 1. Specifically, Plaintiff requests that the Court order that he has renounced his citizenship or that USCIS process his renunciation request and issue a Certificate of Loss of Nationality pursuant to Section 1481 (a)(6). *Id.* at 6-7. Plaintiff also requests that the New York State Department of Corrections and USCIS accommodate an in-person renunciation interview by either providing secure transportation to a USCIS field office or by authorizing the renunciation interview in the New York State facility where he is being held. Compl. at 6-7.

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. United States,* 426 U.S. 394, 402 (1976) (citations omitted). Mandamus

relief is proper only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Council of and for the Blind of Delaware County Valley, Inc. v. Regan*, 709 F.2d 1521, 1533 (D.C. Cir. 1983) (en banc) (footnote omitted). The Court will award mandamus relief only to compel the performance of a "clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). As the Court discusses below, Plaintiff neither demonstrates a clear right to relief nor shows that the Government's purported duties are nondiscretionary.

Plaintiff's request for mandamus relief fails because he has already received all of the relief entitled to him under the Mandamus Act, rendering his claim moot. In considering requests for mandamus action by incarcerated renunciants pursuant to Subsection (a)(6), courts in this jurisdiction have repeatedly held that the issuance of a Certificate of Loss of Nationality is a discretionary act beyond the jurisdiction of the Mandamus Act. *See e.g.*, *Sluss v. U.S. Citizenship & Immigration Servs.*, 899 F. Supp. 2d 37, 41 (D.D.C. 2012); *Weber v. U.S. Dep't of State*, 885 F. Supp. 2d 46, 53 (D.D.C. 2012). Moreover, courts have frequently held that the only ministerial duty owed by USCIS under Subsection (a)(6) is to respond to the renunciant's request. *See e.g.*, *Turner*, 5 F. Supp. 3d at 119; *Sluss*, 899 F. Supp. 2d at 41; *Schnitzler v. United States*, 863 F. Supp. 2d 1, 3 (D.D.C. 2012), *rev'd on other grounds*, 761 F.3d 33 (D.C. Cir. 2014).

Plaintiff erroneously argues that the D.C. Circuit's opinion in *Schnitzler v. United States*, 761 F.3d 33 (D.C. Cir. 2014) alters the analysis described above. *See* Pl.'s Opp'n, ECF No. [28], at 11. In *Schnitzler*, the issue before the Court of Appeals was whether the district court improperly construed a request for a Certificate of Loss of Nationality solely as a petition for mandamus and not as a request for relief under the APA. *See id.* at 38-39.[3] The Court of

[3] *Schnitzler* also concerned a standing issue not relevant to this motion. 761 F.3d at 39-41.

Appeals found that the district court's construction of the plaintiff's complaint was "far too narrow," and that the district court erred by dismissing the case without evaluating the merits of plaintiff's claims under the APA. *See id.*[4] The Court of Appeals did not directly address the district court's substantive analysis of the plaintiff's mandamus claim. *See* 761 F.3d at 37-39. Accordingly, the Court finds that *Schnitzler* does not alter the mandamus analysis performed in a lineage of similar cases—all of which deny requests for mandamus relief by plaintiffs who seek to renounce their U.S. citizenship while incarcerated. *See e.g.*, *Turner*, 5 F. Supp. 3d at 119; *Sluss,* 899 F. Supp. 2d 41; *Weber*, 885 F. Supp. 2d at 53.

For the reasons described above, the Court finds that Plaintiff's request for mandamus relief fails, as he has already received all of the relief entitled to him under the Mandamus Act, rendering his claim moot. *See, e.g.*, *Turner*, 5 F. Supp. 3d at 119.[5] The Court shall now consider Plaintiff's requests for relief under the APA and the Due Process Clause.

---

[4] Here, Plaintiff expressly requests relief under the Mandamus Act, the APA, and the Due Process Clause. The Court shall consider whether Plaintiff is entitled to relief with respect to each asserted grounds. Accordingly, the concern in *Schnitzler* that the court had impermissibly construed the complaint solely as a request for mandamus relief is not present here.

[5] Plaintiff also argues that he is entitled to mandamus relief under *Ganem v. Heckler*, 746 F.2d 844 (D.C. Cir. 1984). However, *Ganem* is entirely inapposite to this case. *Ganem* involved a statute that provided SSA benefits to certain nonresident aliens who, among other requirements, resided in a country whose social insurance scheme did not discriminate against Americans. 746 F.2d at 846. In *Ganem*, the plaintiff's eligibility for SSA benefits hinged on the substance of an Iranian law, which, could be accurately ascertained without direct contact with foreign officials. *See id.* at 854. Here, by contrast, Plaintiff's eligibility for renunciation under Section 1481(a)(6) hinges on subjective factors, namely USCIS' assessment of his intent and his voluntariness. *See* DHS Defs.' Reply, ECF No. [33], at 6.

### C. Plaintiff Fails to State a Claim under the APA.[6]

Plaintiff also contends that the DHS Defendants have violated his rights under the APA. Plaintiff argues that USCIS's policy of not visiting inmates for renunciation interviews and USCIS's action in withholding the Certificate of Loss of Nationality are arbitrary, capricious, unwarranted by the facts, and effectively deprived him of his rights under Section 1481(a)(6) or the Due Process Clause. *See* Compl. ¶ 7. Plaintiff further argues that USCIS's in-person interview requirement exceeds the agency's discretion and that USCIS is "blocking Plaintiff's ability to renounce his citizenship by making the manner impossible for Plaintiff." Pl.'s Opp'n, ECF No. [28], at 14-15.

The DHS Defendants argue that Plaintiff is challenging an agency action that is committed by law to agency discretion. The DHS Defendants argue that the plain language of Section 1481(a)(6) grants the administering agency—here DHS and specifically USCIS—certain discretion in (1) determining the voluntariness of the renunciation, (2) prescribing the form of written renunciation, and (3) designating when, where, and before whom the renunciation must be made. DHS Defs.' Mot., ECF No. [15], at 18. The DHS Defendants further argue that the statutory requirement that a renunciant make his renunciation of nationality "before such officer" provides a "firm statutory basis for USCIS' stated requirement that the renunciation process must include an in-person interview before a designated DHS official." *Id.* at 18; *see also* 8 U.S.C. § 1481(a)(6).

---

[6] While "APA cases are typically decided via summary judgment," on a factually developed administrative record, the exhibits produced by Plaintiff—all of which are also produced by the DHS Defendants as part of a "Supplemental Administrative Record"—provides a sufficient record for the Court to find that no APA violation resulted from the USCIS' action. *Sluss,* 899 F. Supp. 2d at 42.

As a preliminary matter, the statute at issue "requires the agency to assess the voluntariness of an applicant's renouncement without stating how such an assessment should occur." *Sluss*, 899 F. Supp. 2d at 41. USCIS has, therefore, decided to perform such an assessment by requiring "an interview in person at a designated USCIS office." *See* USCIS 37; Compl., Ex. G. This Court, like all of the other courts that have addressed this precise issue, cannot conclude that such a determination is arbitrary or capricious. *See e.g.*, *Turner*, 5 F. Supp. 3d at 119; *Sluss,* 899 F. Supp. 2d 41; *Weber*, 885 F. Supp. 2d at 53. As noted by Judge E. Boasberg, "citizenship is such a prized asset that USCIS is reasonable to insist on an interview in order to ascertain the *bona fides*, mental competence, and true voluntariness of those who are seeking to renounce." *Turner*, 5 F. Supp. 3d at 120. Furthermore, it is reasonable—and within the discretion committed by law to USCIS—that the agency require a renunciant to make his renunciation of nationality in person at a designated USCIS office. *See Kaufman v. Mukasey*, 524 F.3d 1334, 1338 (D.C. Cir. 2008).

Plaintiff also asserts that the DHS Defendants have not offered an explanation as to why they will not accommodate him through alternative methods, such as in-person interviews at the prison or teleconference or telephone interviews. Pl.'s Opp'n, ECF No. [28], at 14-16. Plaintiff contends that these methods are already used by government agencies to conduct removal proceedings, citing 8 U.S.C. § 1229a(b)(2) (authorizing USCIS to conduct removal proceedings in person, over the telephone, or through video conference). The Court finds Plaintiff's argument unavailing. As the DHS Defendants observe in their reply brief, "the fact that Congress has passed legislation enumerating alternative arrangements to in-person removal hearings, by no means requires such alternative arrangements to be permitted in the context of renunciation hearings." DHS Defs.' Reply, ECF No. [33], at 10. Furthermore, in the context of

renunciation hearings, Congress chose not to pass a similar provision and instead committed to agency discretion the procedures by which a citizen may renounce his citizenship under Section 1481(a)(6) ("[I]n such form as may be prescribed by, and before such officer as may be designated by" the Secretary.).

In light of the foregoing, the Court finds that the DHS Defendants have not violated Plaintiff's rights under the APA.

### D. <u>Plaintiff Fails to State a Claim under the Due Process Clause.</u>

Plaintiff also contends that the DHS Defendants have violated his rights under the Due Process Clause. Specifically, Plaintiff contends that "he has been denied procedural due process in not being able to [exercise] his statutorily granted right under 8 U.S.C. § 1481(a)(6) to renounce his citizenship, a right of fundamental importance for which no administrative or adjudicatory proceeding has been established by USCIS." Compl. ¶ 9.

The DHS Defendants argue that Plaintiff fails to allege a procedural due process violation because he fails to identify a protected liberty or property interest. *See* DHS Defs.' Mot., ECF No. [15], at 21-24.

The Fifth Amendment provides, "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'liberty' or 'property.' " *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010). "Only after finding the deprivation of a protected interest do we look to see if the [government's] procedures comport with due process." *Id.*

The Supreme Court has recognized that a citizen "has the right to abandon or renounce his citizenship and Congress can enact measures to regulate and affirm such abjuration." *Mitsugi*

*Nishikawa v. Dulles*, 356 U.S. 129, 139 (1958) (J. Black, concurring). However, the Supreme Court has not recognized that the right to abandon one's citizenship constitutes a *constitutional* right. Rather, the Supreme Court's discussion of the right to abandon one's citizenship has been cabined in the context of one's right to remain a citizen—which, the Supreme Court *has* recognized as a constitutional right. *See Afroyim v. Rusk*, 387 U.S. 253, 268 (1967) (holding that a citizen has "a constitutional right to remain a citizen in a free country unless he voluntarily relinquishes that citizenship").

The D.C. Circuit has not addressed the question of whether a citizen has a constitutional right to abandon one's citizenship. *See Schnitzler*, 761 F.3d at 40 (finding it unnecessary to resolve the issue in the context of a standing dispute). However, a plethora of courts have addressed the issue—precisely in the instant circumstance, where an incarcerated citizen seeks to renounce his U.S. citizenship, but is unable to physically appear before the appropriate Government official to do so. In such cases, courts have repeatedly—and uniformly—held that an incarcerated U.S. citizen has no constitutional right to renounce his U.S. citizenship during the course of his incarceration. *See, e.g.*, *Koos v. Holm*, 204 F. Supp. 2d 1099, 1108 (W.D. Tenn. 2002); *Scott v. United States*, No. 1:13-CV-2030 LJO-BAM, 2014 WL 2807652, at *3 (E.D. Cal. June 20, 2014); *Frazier v. U.S. Citizenship & Immigration Servs.*, No. 12-CV-14533, 2012 WL 5392317, at *1 (E.D. Mich. Nov. 5, 2012); *Taylor v. U.S. Dep't of State*, No. 1:10-CV-01892 LJO, 2010 WL 4225535, at *3 (E.D. Cal. Oct. 20, 2010); *Duncan v. U.S. Dep't of State*, No. 7:08-CV-00564, 2008 WL 4821323, at *2 (W.D. Va. Oct. 30, 2008).

Additionally, it is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights" as part of the penalty for one's criminal conviction. *Price v. Johnston,* 334 U.S. 266, 285 (1948). As such, courts have uniformly held

that an incarcerated citizen has no right to compel governmental officials to transport him out of the country in order to facilitate his renunciation of citizenship. *See Koos*, 204 F. Supp. 2d at 1109 (citing other cases).

This Court agrees with the multitude of courts that have confronted the issue before this Court, and finds that Plaintiff has no right to abandon his citizenship under the Due Process Clause. "The ground for a [due process] claim, if any, must be found in statutes or other rules defining the obligations of the authority charged with exercising [renunciation]." *Connecticut Bd. Of Pardons v. Dumbschat*, 452 U.S. 458, 465 (1981). Where, as here, a plaintiff can point to no "particularized standards or criteria to guide the [Government]" in making a decision, the plaintiff's "claim that he has a protected liberty interest . . . fails." *Bagguley v. Bush*, 953 F.2d 660, 662 (D.C. Cir. 1991). Plaintiff has not pointed to, and cannot point to, any language in Section 1481(a)(6) requiring that DHS accommodate incarcerated persons. Indeed, any argument made by Plaintiff that he has a constitutional right to abandon his citizenship by compelling a government official to appear before him is antithetical to the Supreme Court's recognition that "Congress can enact measures to regulate and affirm" renunciation. *See Mitsugi Nishikawa*, 356 U.S. at 139 (J. Black, concurring).

After Plaintiff fully serves his sentence, Plaintiff is free to resubmit his renunciation request and submit evidence to show that he has satisfied all the legal requirements for renunciation. *See* USCIS 37; Compl., Ex. G. However, as long as Plaintiff is incarcerated, he may not exercise his right under Section 1481(a)(6) to abandon his citizenship. *See Sluss*, 899 F. Supp. 2d at 42 ("As long as plaintiff is incarcerated in the United States, he cannot lose his nationality and, thus, does not qualify for a [Certificate of Loss of Nationality].")

For the above-described reasons, the Court finds that Plaintiff fails to state a claim under the Due Process Clause.[7]

**E. <u>The Court Shall Dismiss Plaintiff's Claims against Defendant Annucci Because the Court Lacks Personal Jurisdiction over Defendant Annucci.</u>**

Plaintiff's Complaint names as a defendant Anthony J. Annucci, the Acting Commissioner of the New York State Department of Corrections ("NYSDC"). *See* Compl. Caption. On May 26, 2015, Plaintiff filed an affidavit of service, indicating that Plaintiff served Mr. Annucci, in his capacity as the NYSDC Commissioner, on April 30, 2015. *See* ECF No. [16]. Mr. Annucci did not respond, and on August 8, 2015, the Clerk of the Court entered default as to Mr. Annucci pursuant to Fed R. Civ. P. 55(a). *See* ECF No. [21]. On July 30, 2015, Plaintiff filed a five-line Motion for Default Judgment, requesting an entry of judgment by default against Defendant Annucci. *See* ECF No. [22]. On October 26, 2015, Plaintiff filed an almost identical Motion, requesting the same relief. *See* ECF No. [31].

The Court "should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). "A personal jurisdiction analysis requires that a court determine whether jurisdiction over a party is proper

---

[7] In Plaintiff's opposition, Plaintiff argues, for the first time, that (1) he, by virtue of being a prisoner, "is in a protected class" and (2) the DHS Defendants' refusal to adjudicate his renunciation claim amounts to "cruel and unusual punishment." To the extent that Plaintiff is raising Fifth Amendment Equal Protection and Eighth Amendment claims, his claims are not properly before this Court, as they were not raised in his Complaint nor in an amended Complaint. *See Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 168 (D.D.C. 2014). Furthermore, even if Plaintiff's claims had been properly raised, Plaintiff's claims fail because prisoners do not constitute a "protected" class, *Tucker v. Branker*, 142 F.3d 1294, 1300 (D.C. Cir. 1998), and the status of Plaintiff's U.S. citizenship is merely an attendant consequence of his incarceration and in no way implicates the Eighth Amendment, *see, e.g.*, *United States v. Lee*, 43 M.J. 518, 520-21 (A.F. Ct. Crim. App. 1995), *aff'd*, (C.A.A.F. Sept. 30, 1996).

under the applicable local long-arm statute and whether it accords with the demands of due process." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995), *amended* (July 28, 1995).

Here, it appears that Plaintiff is suing Mr. Annucci in his official capacity as the NYSDC Commissioner, as opposed to in his individual capacity. However, in either scenario, this Court lacks personal jurisdiction over Mr. Annucci.

If Plaintiff is suing Mr. Annucci in his individual capacity, the Court lacks jurisdiction because all of Plaintiff's allegations regarding Mr. Annucci are confined to the State of New York, and Plaintiff has failed to allege any contacts between Mr. Annucci and the District of Columbia. Accordingly, the Due Process Clause of the Fifth Amendment would prohibit this Court from exercising personal jurisdiction over Mr. Annucci in his individual capacity. *See Mwani*, 417 F.3d at 11.

The Court would also lack personal jurisdiction over Mr. Annucci if Plaintiff is suing Mr. Annucci in his official capacity. Generally, suits against a state official in his official capacity are treated as a suit against the state. *See, e.g.*, *West v. Holder*, 60 F. Supp. 3d 190, 195 (D.D.C. 2014). However, States do not fall under D.C.'s long-arm statute, because the statute only allows the District to "exercise personal jurisdiction over a *person*," D.C. Code § 13–423(a) (emphasis added), and "person" is defined in the D.C. Code as "an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity." D.C. Code § 13–421. States are not considered to be "legal or commercial entit[ies]," meaning that they are not included under the long-arm statute. *Ferrara*, 54 F.3d at 832. Therefore, a suit against Mr. Annucci in his official capacity operates as a suit

against the state of New York, and the D.C. long-arm statute does not allow this Court to exercise personal jurisdiction over the state of New York. *See West*, 60 F. Supp. 3d at 195.[8]

Finally, the Court notes that the DHS Defendants raised many of these same arguments in their Motion to Dismiss, for the purposes of showing that the State of New York is a necessary party that cannot be joined (an argument that the Court need not resolve). *See* DHS Defs.' Mot., ECF No. [15], at 25-31. In response to the DHS Defendants' Motion to Dismiss, Plaintiff asserted that he "should be given the right to present that defendant's contact with the District of Columbia (sic)," and requested that the Court grant Plaintiff an opportunity to conduct "limited discovery on the jurisdiction issue." Pl.'s Opp'n, ECF No. [28], at 24.

The Court concludes that jurisdictional discovery is not warranted. To be granted jurisdictional discovery, "a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.,* 148 F.3d 1080, 1090 (D.C. Cir. 1998). "Mere conjecture or speculation" is not enough to justify such discovery. *FC Investment Group LC v. IFX Markets Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008). Plaintiff seeks to discover additional information regarding Mr. Annucci and the NYSDC, butt the Court cannot "see what facts additional discovery could produce that would affect our jurisdictional analysis." *Mwani,* 417 F.3d at 17.

Accordingly, the Court finds that it lacks personal jurisdiction over Defendant Annucci. Therefore, the Court shall deny Plaintiff's Motions for Default Judgment against Defendant

---

[8] In *West v. Holder*, Judge John D. Bates recognizes a possible exception under *Ex Parte Young*, in which the official sued in his official capacity would be viewed as an *individual*, instead of the State, for the purposes of personal jurisdiction. *Id.* at 195-96. In such a scenario, the Court would still lack personal jurisdiction over Mr. Annucci because the Court would not be able to exercise jurisdiction over him in his individual capacity.

Annucci, and the Court shall dismiss Plaintiff's claims against Defendant Annucci for lack of personal jurisdiction.

## IV. CONCLUSION

For the reasons set forth above, the Court shall grant DHS Defendants' [15] Motion to Dismiss, and the Court shall dismiss Plaintiffs' claims against the DHS Defendants. The Court shall deny Plaintiff's Motions for Default Judgment as to Defendant Annucci, and shall dismiss Plaintiff's claims against Defendant Annucci for lack of personal jurisdiction.

This action shall be dismissed in its entirety.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge